The first case on the call this morning is number 121536, Corbett v. County of Lake and City of Highland Park, agenda number 12. Council, are you ready? You may proceed. Good morning. May it please the Court. Michael Ackes on behalf of the appellate of the City of Highland Park. The issue presented in this case is a straightforward issue of statutory construction, specifically whether the Skokie Valley Bike Path is a trail under Section 3-107B of the Tourist Immunity Act. It's our position that the Skokie Valley Bike Path is a trail is that word is popularly and commonly understood, and that this case can be resolved without resorting to any other means of statutory construction. In fact, we don't even have to look any further than the record in this case to make that determination. Plaintiff's counsel called it a trail in his complaint. During plaintiff's deposition, several times, unprompted by any suggestion from opposing counsel, she referred to the Skokie Valley Bike Path as a trail. And she testified that the members of her riding group were intimately familiar with the Skokie Valley Bike Path, commonly and typically referred to it as the quote-unquote funny trail. Several of the other riders who testified in this case also referred to it as a trail. A police officer who testified about some work he did responding to a call at the Skokie Valley Bike Path, again, unprompted by any suggestion from counsel, referred to it as a trail. In addition to the record in this case, there's other linguistic evidence, if you will, or linguistic facts to show that the Skokie Valley Bike Path is commonly and generally understood to be a trail. The Illinois Department of Natural Resources published a Illinois bike trails map in 2014 identifying the Skokie Valley Bike Path as a bike trail. A non-profit group dedicated to developing this particular type of land use called the Rail-to-Trail Conservancy identified the Skokie Valley Bike Path as a rail with trail. Several publications that I've cited in my brief, local publications, the Chicago Tribune, the Lake County Sun, have all consistently in discussing the Skokie Valley Bike Path using generally and ordinarily understood terms have referred to it as a trail. Despite these numerous examples of ordinary people referring to the Skokie Valley Bike Path as a trail, the plaintiff in the appellate court has dragged us through the looking glass, if you will, to a place where words don't mean what they mean and a trail is not a trail. These examples that I've cited here this morning and in our brief are not arcane or technical. They're ordinary uses of the word trail used by English-speaking people from all across walks of life using the word trail in a manner to be generally understood. This is what statutes aim to do and this is how they should be interpreted. Otherwise, laws are reduced to a sort of Orwellian doublespeak. Ordinary people can't rely on them. But Mr. Atkins, if we say that the immunity actually does apply, would that mean that the local public entity would invite people to bike trail and then tell them it's completely safe and then escape all liability even if there was willful and modest conduct? Isn't that kind of an absurd result? I don't believe it's an absurd result. I believe that the legislature drafted this statute to immunize local public entities for injuries that occur or are caused by a condition on a trail. There's no limitation or exception in that particular section of the Tort Immunity Act or in the Tort Immunity Act at all that says a local municipality can't invite persons to use a trail or in the case of 3-106 to use a recreational facility. The purpose of the Tort Immunity Act is to encourage access and this is how the legislature decided to encourage access by granting immunity in a particular case like this. Isn't the immunity easier to understand in the context of a nature, I'm not even going to use the word trail, but a nature path versus a bicycle path? When we look at the intention of the legislature, isn't it easier to understand the immunity where there's roots and things growing in a natural path and just the foreseeability of harm versus and the understanding that there could be harm and what it would take to do away with it versus a bike path where there could be significant injury without maintenance of it? I would suggest that the foreseeability of harm issue that you raised would be more relevant in a duty analysis. Here a duty is assumed and conceded. This is an immunity statute. Nothing in the language of... I'm just trying to look at it from a public policy perspective and trying to envision the intent of the legislature. The best place to look to find the intent of the legislature is in the language of the statute itself, which doesn't qualify subsection B to any sort of nature trail or an undeveloped trail. It simply says any hiking, riding, fishing, or hunting trail. And I would submit that when trying to define, I guess, the legislature's intent, the best place to look would be the language of the statute itself. What about legislative acquiescence? Did the legislature acquiesce to the definition that Brown versus the county forest preserve case set forth, which talked in terms of a path through a mountainous or forest region? I don't believe so. I haven't seen any argument pressed by counsel that the legislature, in fact, acquiesced. I haven't seen it discussed in any of the case law or literature. You agree, though, that there's case law out there that talks in terms of defining the trail in terms of whether it's through a forest or whether it's through a mountainous region, that sort of thing, from the dictionary definition. I do recognize that there is case law. And that brings me to my next point. I'd like to discuss where I believe those appellate court decisions in some instances erred and in other instances simply, while they may have reached a correct result, erred in their analysis. The court below relied on a dictionary definition of a trail, limiting what a trail could be to a path, I'm not quoting exactly here, in a forest or mountainous region. Now, they made that definitional. So in order to accept that, we have to accept the principle that a trail cannot exist, there's no such thing as a trail, unless it's through a forest or mountainous region. I've just cited several examples of common English speakers referring to the Skokie Valley Bike Path, and we'll call it a trail, I guess that assumes. It's hard to talk about this case, because you have to be careful with your words. We've seen these examples of ordinary people calling this a trail. We can see it's not through a forest region, it's not in a forest, it's in a suburban area. It's a rail with trail, as the Conservancy group discussed it. It's a riding path alongside a railroad track. Is there any limiting language in the statute to say what a trail is or not? There is a funding statute, a program set up to help the executive branch allocate federal funds to development of trails, and they define a recreational trail as a thoroughfare or track across land or snow for purposes of blah blah blah. They just simply list several different types of recreational activities. So those are the qualifiers, so we can assume that the legislature meant that a trail was a thoroughfare or track across land. What we submit in this case is that if the court decides that it needs to resort to a dictionary definition or decides that the statute is ambiguous, that several definitions of trail more accurately state the intent of the legislature than the definition that's been used by the appellate court for some years now. I mentioned the definition from the Recreational Trail Act. I'd also point to the Webster's Collegiate, a marked or established path or route, or the Webster's New World College, a paved or maintained path or track as for bicycling or hiking. It's interesting for me to note that while the appellate court below explained why it used the definition through a forest or mountainous region, it used it because Brown had used it and Mull had used it and McElroy had used it. If you go back to Brown, they don't explain why they picked it. It seems to me that the path or trail in Brown was through a forest preserve, so it fit nicely with the facts of the case and it was the most directly applicable definition from that. There's no discussion in Brown whether the parties disagreed about the definition or if any other definitions were presented to the court for its consideration, so we don't know. Let me answer this question. Is the 606 in Chicago a trail? The 606? I don't know what the 606 is, I'm sorry. It's the pathway in Chicago that was built, I think it's two and a half miles, it was built on top of the railway lines through Logan Park and Ricker Park, as urban as you get. Bushes maybe were planted, but it's literally on top of a railroad track that runs through the city. Is that a trail under your definition? I guess I would ask a few questions that I don't know, I'm not intimately familiar with this, but I would say that if it is used for purposes of riding, hiking, hunting, it wouldn't be used for hunting or fishing, I assume going through Logan Square and Ricker Park, but if it's used for riding a bike. So your answer is it's not the place, it's not whether it's leafy, it's not whether it's maintained or having all those kind of ideas, it's about the use that the land is being put to. Is that how you see this definition? That is how I see it. Then how do you, looking at the Immunity Act, 106 talks about limited immunity for areas that are used for recreation. So how do we read these two statutes together? How does that make sense? I would submit that with 3-107, the legislature decided to offer a broader immunity than it did in 3-106. Likely because it recognized the difficulty in maintaining miles and miles and miles of trails as opposed to discrete parks. Trails that stretch on for miles across several municipal borders. In its judgment, it made the policy choice that in order to best further citizen access to those trails, and keeping in mind the overall purpose of the Tort Immunity Act, which is to prevent government funds from being diverted from the ordinary use of government to the payment of damage claims, they decided that absolute immunity was appropriate in these situations. And again, I would just direct your honor to the plain language of the statute on your trail. If you look at 3-107A for instance, if you want to talk about looking at these provisions together, 3-107A talks about any road, but in that section, subsection, we have several qualifiers. It can't be a street, it can't be a highway, and then we have the issue of the actual language in that subsection of the word primitive, which I know you'll all be discussing tomorrow in the Cohen case. But I would submit that those qualifiers in sub-A show that if the legislature intends to qualify a word or a term, they'll do it, and they'll explicitly do it. And if they don't, you look at the overall intent of the Tort Immunity Act, which is to, like I said, prevent municipal payment of damage claims, and you simply apply the language in a sense, in a broader sense that will more further that goal. I just want to discuss a few reasons why I think that I haven't discussed already, why I think that if the court decides to take the definitional approach, the reason why the definitions we've submitted in our materials are better reflective of the legislature's intent than what was in the appellate court and the rule that the plaintiff urges today. First, it seems silly. Illinois is the prairie state. There are no mountainous regions here. I think we can all agree on that. So it stymies me why the courts would think that the legislature intended a definition of the word trail where half of it is entirely surplus. Second, if we look at the historical context of the Tort Immunity Act, it shows us that the legislature did not intend a construction of the word trail that would only apply to forest preserve districts. A lot of times, Europeans will discuss how the Tort Immunity Act was passed in response to this court's decision in Molitor v. Caneland abolishing sovereign immunity. There's also another case in between the Tort Immunity Act and Molitor. That's the case of Harvey v. Clyde Park District. The legislature's first response to Molitor was not to pass the Tort Immunity Act as we know it today, but it was to pass other immunities that were not classified by government purpose or government function, but rather they were classified by the type of local public entity that was the defendant in the case. So for instance, it wasn't all local public entities are immune from injuries caused by conditions on trails. It would have been all forest preserves are immune from negligence claims. What this court said in Harvey was that that approach was actually unconstitutional. It directed the legislature to the California Tort Immunity Act for an approach that would draw its classifications based on the functionality or the purpose of certain government functions rather than just the type of municipality. Here this interpretation that the appellate court has given us de facto only applies to forest preserve districts. We can see from all the appellate court opinions that grant immunity, the defendants in those cases are all forest preserve districts. Mr. Atkus? Yes. This question I have for you is sort of housekeeping also, if Mr. Higgins can help. In the briefs there's a suggestion, not a suggestion, a reference that there is an agreement between the county and the city for maintenance. Do you remember that? Yes. And somewhere in there there's a reference that it's identified as Exhibit D to a response for production of documents. This is all electronically filed, the records scanned. My office went through, we couldn't find it, so I'm just curious if you or co-counsel, not co-counsel, opposing counsel has a clear identification of where that agreement is if it is in fact in the record. You may not know that right now. I believe it's in the record. I don't know right now exactly where it is in the record. Following up on that, though, what is the status if there is an agreement? Would that put the district with a duty to repair? Well, again, duty, yes, but we're not discussing duties here. We're discussing immunity. We concede there's a duty, and the court will recall from its recent decision in Coleman abolishing the public duty rule that there's a difference between a duty and an immunity. I would direct the court to a decision called DeMarco v. City of Chicago for a well-reasoned opinion offered by Justice Tyson. She said in the appellate court, holding that the Tort Immunity Act applies to tort claims arising out of voluntary undertakings to maintain property as evidenced by contract, which is what we have here with the Supreme Court. I see my time is up. Thank you, Your Honor. Thank you, Mr. Antis. Mr. Higgins? Mr. Chief Justice, members of the court, counsel, good morning. For the record, my name is Peter Higgins. I'm co-counsel Lynn Dowd. May it please the court. Because the term riding trail under Section 3107B is ambiguous and because the Act does not define it, that job has been left up to our Illinois appellate courts. Keeping in mind that the Act is in derogation of common law, it must be strictly construed against the city for a finding of immunity. The issue before the court today, I agree with counsel, is therefore whether the appellate courts have defined riding trail correctly for the past 23 years. Since 1994, our courts have uniformly and consistently found that Section 3107B does not apply to trails in developed areas. If this interpretation is correct, then the lower court's decision in this case should be allowed to stand. There are two tools that the appellate courts have used to interpret the legislative intent by the term riding trail. One is the Webster's Dictionary, the plain and ordinary meaning of the word trail, and the other is the doctrine of in peri materia. Starting with Brown and followed by the five appellate decisions involving the interpretation of Section 3107B, our courts have consistently held that in order for a bike path to be considered a riding trail under Section 107B, it must be a marked path through a forest or mountainous region. It is simply not a riding trail if it runs through the middle of a developed commercial, industrial, or residential area, as this trail does. As a matter of law, this restriction defeats the city's assertion that the path is a riding trail. The city has made no contention that the path runs through a forest or mountainous region. If you look at the photos or read the depositions and affidavits describing the path and its surroundings, you'd agree with the lower court that this trail or path is about the furthest thing from what the legislative intent was in terms of a natural, scenic forest area. This path, and I'm sure you've seen the photographs, Your Honors, is you ride along the path, you see the power lines, you see parking lots, you see warehouses, cyclone fences, stacks of industrial piping, building materials, utility poles, railroad tracks, highways that you have to cross, streets that you have to cross. The presence of industrial, commercial, and residential development all around this path negate any conclusion that it is located in a natural and scenic wooded area as required by Brown or surrounded by wooded or undeveloped land as required by Mull. Is there a limiting language saying wooded in the statute? No, Your Honor, but there is language in the statute, and I'm getting to that in a minute when I talk about in peri materia. There is language in the statute that refers to primitive areas under section A of the statute. And if you read section A in peri materia with section B, if you read them together, not in isolation, where an access road or the trail extends to primitive camping, horseback riding, fishing, hunting trails, as Justice Theis said in terms of 606, it would be absurd to read this trail, to read it one word in isolation that it's a riding trail that doesn't apply to scenic wooded areas. What does riding mean then? Is there a limiting language to define riding? There's no language to define riding, but again, if you read the entire statute together in peri materia, riding can be bicycle riding, but bicycle riding intended to be in an undeveloped primitive area. What about walking? It would include walking, but again, there's a distinction. It doesn't say riding, though, but it specifically says riding. It does specifically say riding, but we're talking about the different types of areas. Where do you draw the line between the types of areas, the types of property that are intended by the statute and the types of property that are not intended by the statute? So the use doesn't make any difference. How you use it doesn't make any difference, whether you walk or ride. I would agree with that. Then the word riding trail means nothing, riding. The word riding trail applies, but again, the focus, I believe, from the legislature is on the property itself and the surrounding area. That's also what the courts have interpreted it as. So location determines immunity? Yes, yes. Well, what if there's some or both? In other words, it goes through some undeveloped primitive area, but it also goes through some developed area. Does that affect your analysis? That was a question from the Mull case and also addressed in Corbett in the lower court. The difference between your question, Your Honor, and the Mull case, it went through some developed areas, but the Mull court still found that there was absolute immunity. The difference between Mull and our case is, in our case, as pointed out by the lower court, this trail or path, whatever you want to call it, and I'll get to that in a minute, goes through all developed areas. So the entire path is filled with overhead wires and cyclone fences and building materials and railroad tracks and crosses roads. So that's the distinction. There can be some developed areas, according to Mull. But when you have a path like in this case that goes through all developed areas, that's where you have to draw the line. I understand your argument relative to in paramateria, but what about the other side of that coin where we sometimes say when a legislature says something in one section of the statute making limitations and then in another section does not appear specifically in, A, referred to primitive areas, but in, B, did not. How do you respond to that? Well, Your Honor, again, I'm going by what the case law has said. And all the courts, and by the way, there are I'm sure literally hundreds of trial court judges and certainly all of the appellate court justices who have looked at this issue and who know a lot more than I do about that question. They have said that you look at both sections together. You can't take the word riding in isolation and just say, well, that means it's for bicycles in this area. You have to take the whole section of the Act of 3107 as a whole. That's been repeated throughout all the cases. Of course, A talks about any road and B talks about a trail. So there are two different things. But you can say they're both applicable. The primitive area should be applied to both. It should be applied to both, yeah. The word primitive, I think, is important. Primitive camping, hiking, fishing, hunting applies to the whole Section 3107, including A and B, even though A applies to access roads and B applies to trails. Mr. Dickens, you're using the word path all the time. So how does that come in? Okay. I think it's a legal question, Your Honor. Council mentioned before that the word trail has been used sometimes. The word path has been used sometimes. It's not up for people like me or people who give depositions to call it a trail or a path, and that determines whether it's subject to immunity under 3107A or B. It's up to the courts to determine whether this is honestly whether it's called a trail or a path is irrelevant in terms of legally whether it's entitled to immunity. So the underlying purpose behind 3107B's grant of absolute immunity is also inconsistent with the facts of this case. The purpose of 3107B, as stated by Goodwin in 1994, is to extend absolute immunity to local public entities where the injury occurred in undeveloped natural areas because, first of all, the burden in both time and money would be too great, and secondly, it would defeat the purpose of enjoying these types of recreational properties in a truly natural setting. These considerations do not apply in this case because the bike path is in the midst of an easily accessible, developed area, runs right through the city of Highland Park, through a commercial, industrial, residential area of Highland Park, and as Justice Burke pointed out before, the city has entered into a contract to maintain this path in a safe condition. In other words, the city has voluntarily agreed to take on this burden. I wouldn't even call it a burden for the city because they've already contracted to maintain the path in a safe condition, and it's right in their backyard. It's not like they have to drive out 30 miles into some remote, wooded, scenic area to maintain it. It's also our position that the city, by entering into this maintenance contract, has removed itself from any tort immunity protection. Here, had the legislature intended for Highland Park to be able to preserve its tort immunity defense when it entered into this contract to maintain the path, the legislature would have expressly stated so in 3107 as it had in other sections of the act. The other tool the courts have used, as I've discussed, is the doctrine of in peri materia, where you take the statute as a whole, not the words in isolation. Tomorrow, as a first district case which used in peri materia to analyze 3107A and B together. The court noted in Cohen that since the Scott v. Rockford case in 1994, Illinois courts have uniformly found that 3107B does not apply to trails in developed areas. It then concluded that since 3107B has been limited to trails in undeveloped areas, 3107A is likewise intended only to apply to access roads in undeveloped, primitive areas. So applying the doctrine of in peri materia to our case, when we consider 3107B in peri materia with 3107A, since A is limited to access roads in primitive camping, recreational, or scenic areas, B is likewise intended only to apply to hiking, riding, fishing, or hunting trails in primitive camping, recreational, or scenic areas. In other words, to achieve harmony between 3107A and B is to find that the entire statute applies solely to undeveloped, primitive, scenic areas. The Cohen court also utilized the doctrine of in peri materia for analyzing section 3107 with 3106, which further supported its decision that 3107 did not apply to the trail in question. Both 3107 and 106 apply to recreational property, but 106 provides immunity for ordinary negligence only, whereas 107 provides absolute immunity. So what differentiates the property described in 3106 from the property described in 3107? 3106 was created to encourage local public entities to develop and maintain parks and recreational areas while still holding them accountable for willful and wanton misconduct. 3107, on the other hand, was created to provide absolute immunity for injuries on natural, undeveloped property because of the inherent burden to maintain it. It is intended to be much more narrow than 3106. 3106 codified what we as a society want. We want parks and recreational areas and the enhancement of our lives, but we also want and need these areas to be safe. Allowing local public entities to be liable for willful and wanton conduct accomplishes both goals. All of these considerations lead to one conclusion. The legislature intended 3107 as a whole to apply solely to primitive, undeveloped public property and intended 3106 to apply to parks and recreational property and trails like this one. But isn't that reading an exception into the statute? The statute doesn't have a limitation.  I believe that the legislature clearly intended two separate statutes, 106 and 107. 106 applies to recreational property for the enjoyment of the public, but 107 is more narrow than 106 and applies to specific types of property that go further than 106 does. What about the Barnett v. Zion Park District case? You got me on that, Judge. I'm not familiar with that case. I'm sorry. All right. They said the language in the statute would limit its scope. It should not limit its scope to undeveloped trail or trail within the rural area. Okay. That's not a case that is interpreting 3107. It's a case interpreting 3106? Well, the conflict between the two is there's no limiting language. Okay. I believe that the conflict between the two isn't actually a conflict. I think 3106 applies to recreational property and N applies to this trail. But 3107 goes further than 3106. 3107 provides absolute immunity for property unlike recreational property. 3107 provides absolute immunity for trails that are out in the middle of nowhere, trails that go through wooded areas, scenic areas, where the municipality shouldn't have a burden to maintain those types of trails. Is the requirement that the trail be in a forest too restrictive under 3107? No. Again, you have to draw the line somewhere. If the trail basically, again, if it's out past, if it's in a wooded, scenic area, then 3107 should apply. Really what we're talking about here, Your Honor, I think the bottom line, including this case, there have been seven cases interpreting trail. The court below did nothing wrong here. It simply followed precedent. We're talking about interpreting a statute here. Courts have been interpreting this statute for the past 23 years, and a lot of circuit court judges and appellate court justices have been interpreting it the exact same way that the appellate court did here. In addition, it was pointed out earlier, Justice Garmon, that the legislature is presumed to know how the courts have been interpreting these statutes by the legislature not moving forward and changing 3107, changing the law to say it just applies to this or that. They have acquiesced. They have acquiesced in the way that the courts have interpreted the statute. And the Faust case, which is another case interpreting Section 3107 decided last year by the to expand the scope of immunity when it is in the public's best interest to do so. We leave such a determination to the legislature and will not expand the scope of immunity through judicial action. Also, for public policy reasons, 3107B should not apply to this case. Highland Park promotes the use of this path. They have signs all along the path saying how they maintain the path. The path is provided by them as an important part of its bike path transportation system. This bike path is more similar to a roadway than a quote-unquote primitive trail and should therefore be maintained like a roadway, especially in the current bicycle climate in both Illinois and the United States where bicycling is no longer just a leisure activity but an important mode of transportation. 3107 is good law. It makes sense. It shouldn't be changed. It was truly an honor to address you this morning. Thank you very much for your time. Thank you, Mr. Higgins. Mr. Ackes, tell me what's wrong with this analysis. If we find that there's ambiguity and try to look to legislative intent, it would seem that if those responsible with maintaining the trail had absolute immunity, there's a greater chance that it would presumably end up more in disrepair than if they did not have that immunity and as such there may be more people injured. If we look at that as kind of an analysis as to why the legislature would grant absolute immunity in this kind of scenario, and then it does come down to basically a public policy decision, why wouldn't we find, as the appellate courts have found, and if that isn't what the legislature intended, they could be more explicit and amend the statute? I think it would be more appropriate to look at the public policy behind the statute as granting access as opposed to making sure there's maintenance. Cities and towns and forest preserves can close things. What the legislature intended was to keep them open. The policy choice it made to advance that goal was to protect local municipalities from damages claims. That may seem like a harsh result in some instances, but the remedy for that is with the general assembly, not before the court. Did the trial court, I don't remember if it was the trial court or the appellate court, also found that there would be immunity under 106? No, 106 was not an issue in our case. 106 was an issue with respect to the county's case, but it's my understanding that their motion for summary judgment was unopposed. You don't think your client would have limited immunity under 106, that is for recreational property? It is not an issue that we decided to raise on summary judgment. If we end up going back to the trial court and we have to argue a motion for a directive verdict, would it be an argument that we would present based on the trial evidence? Perhaps. It's not the route we decided to take at this stage of the case. To just touch on a few of counsel's points, I think counsel's argument is better suited for a common law duty analysis. He has to recall that we're talking about a statute here. So when counsel says, well, trail and path are the same and it doesn't matter how I use them, well, we're talking about a statute that uses the word trail. So it is important. Words do matter in this context. Counsel's argument added several exceptions and limitations to the plain language of the statute, which this court has consistently, for the last 20 years, harped on the appellate court's not to do, going back to the Chicago flood and Rees v. City of Chicago and the DeSmet case and Moore v. Chicago Park District. Don't read exceptions and limitations to the plain language of this act that aren't there. Implicit in that, I think, is don't do that under the guise of statutory construction. Don't do that under the guise of defining a term, essentially limitationally. If we look at the plain language and counsel says, you know, it's not for me or people who give depositions to decide what this is, well, when you look to a statute, you say, well, how is this word commonly, ordinarily, and popularly used? So it is for people that give depositions and lawyers who talk and judges who listen, judges without the ropes, judges as normal people. How would I use this word? Would I describe this thing as a trail? In my common, ordinary language, before I know that it's in a statute, before I know that immunity hinges on it, how would I use the word commonly and popularly understood? How would people understand the term riding? Horses? Horses? Bicycles? Unicycles, I guess? Riding is a rather broad term. People talk every day about riding their bike. I'm kind of stuck on judges as normal people. I'm sorry. I'm a little intimidated by you guys this morning. Don't take any offense to that. I think it is a highest compliment. I would just say the position I'm advocating here is not unprecedented. It's essentially the position that the California courts have used in interpreting their immunity provision, which is identical to ours. In fact, ours was based on theirs. I would urge the court to take a look at the Carroll case and the Farnham case, as I've cited in my brief, as well-reasoned applications of their immunity statute, applying to trails in urban and suburban areas. We're talking about trails that run along the beach in the city of Los Angeles and Los Angeles County. In those two cases, they specifically reject arguments that the statute is only intended to apply to primitive trails based on the language in the statute, which is the same as ours. Any trail, any hiking, riding, biking, fishing, hunting trail. Not any primitive. Again, they've also rejected the contention that the statute is intended only to apply to unpaved trails simply because that word appears nowhere in the language. What does hiking mean? What does hiking mean? The language is so plain. Right. I asked you about riding trail. How about hiking trail? What does that mean? Hiking, at least to me, connotes a certain type of walking. It wouldn't necessarily, I don't think, be jogging or running. Maybe through a rocky terrain, perhaps. So you could have, I guess, a rocky trail that would be a hiking trail. I've never hiked. But I have ridden a bike. If there's no other questions, I would just waive the remainder of my time. Seeing none, thank you, Mr. Atkins. Thank you again. It was an honor. Case number 121536, Corbett v. City of Highland Park, County of Lake, will be taken under advisement as agenda number 12. Mr. Atkins, Mr. Higgins, thank you for your arguments this morning. You are excused for their offense.